Good morning, your honors. Mr. Harris, may it please the court. My name is Anna Williams and I am arguing on behalf of the appellant, Dennie Morris. Mr. Morris was sentenced to 30 months imprisonment for possession with intent to distribute methamphetamine. He was stopped for a traffic violation by the Garland County Sheriff's Deputy, Justin Parker, placed under arrest for a warrant on a failure to appear out of a juvenile court regarding his son. During the pat-down, Deputy Parker found money and then subsequently found more money in a pair of pants in Mr. Morris' truck. At Mr. Morris' direction, Martin's towing was on route to tow his truck, but then Deputy Parker searched the vehicle prior to it being towed. At issue today is whether the search was done in violation of the Fourth Amendment. Mr. Morris contends that it was, and that he maintained constructive control of his truck when the towing company he chose was on route to pick up this vehicle for him. The Fourth Amendment of the Constitution guarantees the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. Thus, to be constitutional, a warrantless inventory search must be done pursuant to standard police procedures and for the purpose of protecting the car and its contents. Now, police may exercise some discretion to impound a vehicle, but that has to be exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity. Ms. Williams, what's the relationship of the defendant's call for the tow and the police look into the vehicle and identification of potential contraband? Do you mean when he asked for his phone? Right, right. And the police looked in and at that point observed things that became of interest and eventually identifying Mr. Morris and creating the potential for an arrest. Oh, he identified him a little bit earlier than that because when he, Mr. Morris didn't have his identification on him, and so when he told them who he was, that before they went into his pants in the vehicle is when they identified him as a person to be arrested because there was a warrant for the general arrest. So what was the relationship between the identification and the connection to the warrant and the call to the tow company? Which came first? The identification came first. And so he was, I believe, already inside of the police vehicle when they went to get the money out of his pants in the truck. Okay. Well, Deputy Parker, while he believed he was doing the right thing and he was attempting to be diligent and protect the community, his belief was that because Mr. Morris had too much cash on him that there must be some nefarious purpose. I feel that this is a dangerous precedent to subject citizens to a search if they carry cash. Further, his decision to search the vehicle was actually not in compliance with the written policy of the Garland County Sheriff's Office tow policy that was provided to the court. This is Judge Smith again. This is Judge Smith again. Did the written policy have a provision for towing an incident to an arrest of the driver? There were different provisions and alternatives on when they would tow the vehicle. And I think the key phrase being when it's in the custody and control of the Garland County Sheriff's Office. Our argument is that Mr. Morris maintained constructive possession of the vehicle by directing. As I understand the logic of the district court was that the policy was incomplete. And didn't cover the specific facts here where there's an arrest and a search incident to the arrest. And that the tow policy didn't really cover this and the police testimony was they had an informal unwritten policy that covered this scenario. That is not my understanding of this case. That may be my colleague's case in the next one. It's tow policy day, so I may be getting them confused. Yeah, this one actually has. On the chief's question, you know, when you when you go through the policy, I don't know that I agree with you. But I want to get to your constructive and I'll give you a chance to get through the policy. But the constructive possession strikes me as wrong because it is true that he picked the towing company. But I don't think because I mean, it wasn't his choice to tow the vehicle. It was the police choice to tow the vehicle. I'm not sure that you can say he maintained constructive possession. The reason why it was towed was because the police had to take possession of the vehicle or do something with the vehicle. Because he could no longer drive it because he was arrested. So I guess my question is, how does picking the tow company make this any different from the standard fare inventory search case? I think if looking at the policy, when you look under Section 4.4, and that's where it's talking about arrest of a driver. I don't think they're going to impound or take possession of his vehicle. When they give him the opportunity to select the towing company, our belief is that he can also direct where it's towed. Like he could have it towed to his home. Where did they tow it in this case? Did they tow it to the police impound lot? No. When the officer does the search before the tow truck gets there, he calls DTF. And the drug task force takes over. And where did they send it? The DTF, do you know? I actually do not have that information. I assume they have some space separate where they put that. Mr. Harris may know. The argument you're making, and I didn't interrupt you, but I think the argument you're making is that somehow towing the vehicle is analogous. When he picks the tow company, it's analogous to when a responsible and reasonable person is on the scene who can take the car away. That somehow there's an analogy there. And I guess my question for you is, is there any, I mean, I understand you're going to the tow policy. Is there any precedent to support that either in our circuit or anywhere nationwide? Not that I'm aware of. The only precedent I can think of is that our precedent looks to whether it was reasonable within the tow policy. Because here we're also arguing that it's pretextual, that because he finds what he deems to be too much money on the person and in the pants, which is also brought out during our hearing on the suppression issue and brought out by opposing counsel, he figures that's too much money. That raised his suspicion. He admits that on the stand. And then he does the search. And then when he does an inventory, albeit not on the proper form, it's just a very limited list if you're really trying to protect the property of the defendant in this case. And I'm running into my rebuttal time. I'd like to reserve the remainder, Your Honor. Thank you, Ms. Williams. Mr. Harris. Thank you, Your Honor. May it please the court. My name is David Harris. I represent the United States. First of all, I would like to point out some of the facts in this case. On August 21st, 2017, Mr. Morris was traffic stopped for speeding in an improper lane change. When the officer made contact with him, he ran him through dispatch and learned that Mr. Morris had a valid warrant for his arrest. At that point, Mr. Morris was placed into the patrol vehicle. Simultaneous to that, the deputy gave, although he was not required, he gave Mr. Morris the preference of a towing company. That's when he searched in incident to arrest and found the cash in his pocket. At that point, Mr. Morris is in the patrol vehicle. He then requests the deputy to go back into his truck and get his cell phone and more cash. So at that point, the tow company had already been called. His vehicle was going to be towed pursuant to the policy. It was on private property. Mr. Morris was the sole occupant of that vehicle, and therefore the policy 4.431 specifically states that the vehicle will be towed. If the vehicle is towed, he's got to do an inventory. That's what he did. Now, at the suppression hearing, the officer did testify that yes, that large amount of cash in 20s and 100s, roughly $1,600, was suspicious. But keep in mind that was after the fact, after the decision to tow had already been made. So there's no pretext. The court found no pretext. The officer did not know Mr. Morris. This was not part of a larger investigation. There is no, as this court has said, there is no something else in this case. There is no investigative motive. Now, the court did find that the officer didn't strictly comply with his tow report in that he didn't list the condition of certain items, where they were specifically located, though he did list the car seat, the knife, books, trash, and he listed miscellaneous tools. He left out some screwdrivers, some wrenches, a tire inflator. But this is not the case, as Morris suggests, this is not the case like in Taylor, where the defendant was a handyman with literally hundreds of tools and he just put two words on the report, miscellaneous tools. Plus, in that case, there was a clear investigative motive. That's not the situation here. Now, in terms of the constructive possession argument, I'm not sure I understand that. Mr. Morris was never in control of anything. He was in the backseat of the patrol vehicle, cuffed. The deputy was in control of the vehicle. Mr. Morris didn't even pay the tow. The drug task force, if you look at Exhibit, I believe it's Exhibit 3, the task force paid the receipt. It was in response to, I believe, Judge Strauss's question. It would have been in the drug task force impoundment lot. Mr. Morris never saw this vehicle again. Suppose that he said, I want to tow the vehicle. I mean, I think you're right that under the facts of this case, it may be a little different. But suppose he says, I want to tow this vehicle to my mother's house. My mother has some extra spots in her driveway. I don't want you to take possession of the car, but I'm going to get it out of this private lot because I understand we don't have permission to be there. Would that be a different case in your view? Your Honor, I think in this case, the drugs, the 85 grams of meth, large amount of cash, which totaled around $1,900 once he got into the vehicle. At that point, that truck is being seized as evidence. So, no, it would not be returned to anyone. It would go into law enforcement custody and be forfeited. Could you have done the search? So, I guess I'm backing up. Could you have done the search if there was some sort of constructive possession? If he said, I just do not agree that you can tow this to your impound lot. I can have a reasonable person do it. I don't have one with me, but I want to tow this to my mom's house. I mean, could you then do the search under those circumstances? And again, I think that the policy is ambiguous on that particular point. I think there's other things that the defendant is arguing that are not ambiguous, but I think on that point, it's ambiguous. I think if he stated, I have a responsible third party that can take control of this vehicle and that person, I believe Deputy Park can testify to this at the hearing, if that individual had a valid driver's license, then in that scenario, the vehicle would, he would allow it to be taken over by that third person. However, in this case, when you have the drugs and the cash in the vehicle, then it's turned over to the Drug Task Force. That's evidence. And so, I don't think there was any other option at that point. Okay. Unless the court has any further questions, I would yield the balance of my time. I don't see any. Ms. Williams, everybody. You're muted. You're still muted. Thank you. I want to go back to Mr. Harris talking about because there were drugs and cash. Our point is that without Deputy Parker making an assumption that that amount of cash, and I think it was actually $1,600 and something, meant there was nefarious conduct, he wouldn't have conducted the search. This court has stated that cash is not inherently criminal. That would be the Muhammad case. To allow this constitutional violation to go forward unpunished permits officers to illegally search persons when they subjectively believe that a person is carrying whatever that officer determines to be an excessive amount of cash. Although he did name Ms. Williams. Ms. Williams, once the decision was made to arrest Mr. Morris, wasn't there going to have to be an inventory search at any rate? We don't believe so. We think, and it didn't get to that point because DTF arrived on the scene because the officer went ahead and searched the vehicle. But our argument is that he could have directed the tow company to tow his car to his house. His arrest had to do with a failure to appear for his juvenile. It had nothing to do with drugs. And it was simply, and I think if you look at some of the briefing and the transcript from the suppression hearing, you'll note that it was really the officer's belief that there were narcotics in the car because he simply, nobody carries that kind of cash on their person. I've run out of time. Thank you, Your Honor.